UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
EARL HARRISTON,

                Plaintiff,

                                                        **MEMORANDUM & ORDER**

    -against-

                                                        05 CV 2058 (RJD)(LB)

DEPUTY UNITED STATES MARSHAL
KENNETH MEAD,

                Defendant.
-----------------------------------------------------------X
DEARIE, Chief Judge.

On April 28, 2005, pro se plaintiff Earl Harriston brought an action pursuant to 42 U.S.C. § 1983 against former defendants Brian Kennedy and unnamed detectives within the 92nd and 113th precincts alleging violations of his constitutional rights. In a Memorandum and Order dated June 21, 2005, this Court dismissed plaintiff's claims against Kennedy and granted leave to amend. Plaintiff then filed two submissions, naming as individual defendants eight members of the New York Police Department, two federal agents, and two United States Marshals. By Memorandum and Order dated December 16, 2005 ("12/16/05 Order"), this Court consolidated plaintiff's actions and dismissed all of his claims except one against the Deputy United States Marshal ("DUSM" or "Deputy") who allegedly strip-searched plaintiff at Rikers Island. See Harriston v. 92 Precent, No. 05-CV-2058, slip op. at 32 (E.D.N.Y. June 21, 2005). The Court construed plaintiff's § 1983 action arising from the alleged strip search as a Bivens claim against DUSM Dawn Mahoney, who was removed from the action when plaintiff eventually identified DUSM Kenneth Mead as the alleged tortfeasor. Defendant Mead now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## BACKGROUND

The background to this action was fully set forth in the 12/16/05 Order, but will be briefly recounted for context. On January 25, 2005, plaintiff was arraigned in Criminal Court, Queens County, for robbery and attempted murder, remanded without bail, then held at Rikers Island by the City of New York Department of Corrections. Related to the same string of robberies giving rise to the state prosecution, a criminal complaint was filed in federal court against plaintiff and two other persons for attempting to kill a government witness. Magistrate Judge William D. Wall issued an arrest warrant, and on February 11, 2005, Deputy Mead went to Rikers Island to take plaintiff to the United States District Courthouse in Central Islip, New York, for an appearance before the Magistrate Judge. In order to obtain federal custody over plaintiff, the United States secured a writ of habeas corpus. See Application for Writ of Habeas Corpus, dated February 4, 2005, annexed as Exhibit 2 to the Lynch Decl. Deputy Mead completed the "Surrender of Inmate to Law Enforcement Agency" form, as required of law enforcement officers seeking to take custody of those held at Rikers Island. See Correction Department City of New York, Surrender of Inmate to Law Enforcement Agency, Form: 44B, dated February 11, 2005, annexed as Exhibit 3 to the Lynch Decl.

Plaintiff alleges, and for purposes of this motion the Court assumes, that prior to transport to the Central Islip courthouse, defendant strip-searched plaintiff at Rikers Island.[1] Plaintiff offers no further details about the nature of the search, stating only that "[o]n the date of 2/11/05

---

[1] This Court previously determined that plaintiff was an "arrestee" at the time of the alleged strip search for purposes of his Bivens action. See Harriston v. 92 Precent, No. 05-CV-2058, slip op. at 30 (E.D.N.Y. June 21, 2005).

inside of Rikers Island I was strip-search[ed] inside Rikers Island by [the DUSM]. . . ." Am. Compl. 9. After the alleged strip search, defendant brought plaintiff to Central Islip where he appeared before the Magistrate Judge and was given a detention hearing. At the hearing, the Magistrate Judge found that plaintiff had been charged with a crime of violence as defined in 18 U.S.C. § 3156(a)(4), and because plaintiff could not rebut the statutory presumption that no conditions of his release would reasonably assure the safety of the community, the Magistrate Judge ordered him detained pending trial. Plaintiff did not seek review of this determination.

## DISCUSSION

### I. Applicable Law

#### A. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the burden of establishing the absence of a genuine issue of material fact, see, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), and the court resolves all ambiguities and draws all reasonable inferences in favor of the non-moving party, Castle Rock Entm't, Inc. v. Carol Publ'g Group, 150 F.3d 132, 137 (2d Cir. 1998).

Where a party proceeds pro se, the court will construe the submissions "to raise the strongest arguments that they suggest," Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994), employing a flexible standard of sufficiency to accommodate the unfamiliarity of most pro se

3

plaintiffs with formal pleading requirements, Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002). Nevertheless, a pro se litigant is not exempt from "compliance with relevant rules of procedural and substantive law." Evans v. Nassau County, 184 F. Supp. 2d 238, 242 (E.D.N.Y. 2002).

### B. United States Marshals Service Policy Directives Regarding Strip Searches

Section 9.3 of the United States Marshals Service Policy Directives ("Policy Directives") defines a strip search as "a complete search of a prisoner's attire and a visual inspection of the prisoner's naked body, including body cavities." Policy Directive 9.3(D)(3). The Policy Directives authorize DUSMs to conduct a strip search of a prisoner in custody where "there is reasonable suspicion that the prisoner may be (a) carrying contraband and/or weapons, or (b) considered to be a security, escape, and/or suicide risk." Policy Directive 9.3(D)(3)(a). The Policy Directives further state that:

> Reasonable suspicion may be based upon, but is not limited to, one or more of the following criteria:
>
> (1) Serious nature of the offense(s) charged; i.e., whether crime of violence or drugs;
> (2) Prisoner's appearance or demeanor;
> (3) Circumstances surrounding the prisoner's arrest or detention; i.e., whether the prisoner has been convicted or is a pretrial detainee;
> (4) Prisoner's criminal history;
> (5) Type and security level of institution in which prisoner is detained; or
> (6) History of discovery of contraband and/or weapons, either on the prisoner individually or in the institution in which prisoners are detained.

Id.

Defendant argues that plaintiff's claim should be dismissed because, under the

circumstances, a strip search was reasonable under the Fourth Amendment. Defendant claims that he followed the Policy Directives setting standards for strip searches, which plaintiff does not dispute, and that the Policy Directives comport with constitutional standards articulated by the Supreme Court and the Second Circuit Court of Appeals. Specifically, defendant notes that at the time of the alleged strip search, plaintiff had been charged with a felony crime of violence. Defendant contends that this established "reasonable suspicion" sufficient to justify a strip search under the Policy Directives and Second Circuit precedent. Moreover, defendant argues that even if this Court found the strip search unconstitutional, defendant would be entitled to qualified immunity because the law as it applies to felony arrestees was not clearly established.

### C.     Second Circuit Law Regarding Strip Searches

The Fourth Amendment prohibits unreasonable searches and seizures by government. U.S. Const. amend. IV. Applying the Fourth Amendment's "reasonableness" requirement to strip searches in institutions of detention, courts have long sought to balance the government's interest in maintaining safety and order against the individual's interest in avoiding the invasiveness of strip searches. The Supreme Court has held that in balancing these interests, the Fourth Amendment requires courts to "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell v. Wolfish, 441 U.S. 520, 559 (1979). Applying Bell, the Second Circuit has held that, at least for those charged with misdemeanors and minor offenses, strip-searching an arrestee at a local institution of detention requires reasonable suspicion that the individual is concealing

5

weapons or other contraband. Weber v. Dell, 804 F.2d 796, 802 (2d Cir. 1986).[2] Weber further explained that reasonable suspicion must be based "on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest." Id. "The reasonable suspicion test is objective, not subjective—that is, the test is whether a reasonable officer could have particularized suspicion considering the totality of the circumstances." Sarnicola v. County of Westchester, 229 F. Supp. 2d 259, 269 (S.D.N.Y. 2002) (citing Cartier v. Lussier, 955 F.2d 841, 843 (2d Cir. 1992)). The suspicion must be particular to the individual, Weber, 804 F.2d at 802, and "blanket policies subjecting all newly-arrested misdemeanor detainees in a local correctional facility to visual body cavity searches are unconstitutional," Murcia v. County of Orange, 226 F. Supp. 2d 489, 493 (S.D.N.Y. 2002) (citing Shain v. Ellison, 273 F.3d 56, 64-65 (2d Cir. 2001)). Although the Second Circuit has not specifically addressed whether the same standard of individualized reasonable suspicion applies to felony arrestees, district courts in this circuit have held that it does. See Murcia, 226 F. Supp. 2d at 494 (concluding that

---

[2]The Second Circuit distinguishes between the level of justification required for strip-searching arrestees/pre-trial detainees in jails, versus the justification required to strip-search those housed with convicted criminals in prisons. As noted, under Weber, arrestee/pre-trial detainees in jails cannot be subject to a strip search without individualized, reasonable suspicion that the individual is carrying weapons or contraband. By contrast, in Covino v. Patrissi, 967 F.2d 73, 78-79 (2d Cir. 1992), the court applied the more deferential "legitimate penological interest" test of Turner v. Safley, 482 U.S. 78, 89 (1987), to assess the constitutionality of strip searches where the arrestee/pre-trial detainee was housed with convicted prison inmates. In Shain v. Ellison, 273 F.3d 56 (2d Cir. 2001), the court reconciled Weber with Covino by distinguishing jails from prisons. Shain concluded that in jails, Weber's individualized reasonable suspicion test applies, whereas in prisons, Covino/Turner's legitimate penological interest test controls. Shain, 273 F.3d at 65-66; see also Iqbal v. Hasty, 490 F.3d 143, 170-71 (2d Cir. 2007) (explaining Weber, Convino, and Shain). With respect to plaintiff's claim, the Court does not have to decide the question of whether Rikers Island is a "jail" or "prison" for these purposes since the Court finds the search was constitutional under the stricter reasonable suspicion test of Weber.

"'individualized reasonable suspicion' rule should apply to accused felons as well as misdemeanants"); Sarnicola v. County of Westchester, 229 F. Supp. 2d 259, 270 (S.D.N.Y. 2002) (applying individualized reasonable suspicion test to strip search of felony arrestee).

At the time of the alleged strip search, plaintiff had been charged with a crime of violence. On this basis alone, defendant asks the Court to adopt a per se rule that crimes of violence trigger individualized reasonable suspicion sufficient to justify a strip search of an arrestee. See Def.'s Mem. Supp. Summ. J. 6-8. The Second Circuit has never adopted such a rule, and no district court in this circuit has squarely addressed the issue. Defendant cites Kramer v. City of New York, No. 04 Civ. 106, 2004 U.S. Dist. LEXIS 21914 (S.D.N.Y. Nov. 1, 2004), as supportive of a per se rule, but if anything that case illustrates the opposite.

In Kramer, the plaintiff was arrested for attempted murder, clearly a crime of violence, and subjected to a strip search. The court upheld the search, but noted that the officer had reason to conduct the search based on much more than just the label of the charged crime. Plaintiff was accused of attempting to poison her husband with arsenic, "a substance that is capable of being carried in a container small enough to be hidden in a body cavity." Id. at *31. The court further considered factors specific to plaintiff and to the context surrounding the search:

> Perhaps most significant is the fact that plaintiff was searched only upon the two occasions she indicated she had to use the restroom. This raised the reasonable suspicion that plaintiff may have been secreting arsenic or other contraband within her and would take the opportunity to use the restroom to expunge it.

Id. The court additionally found that the search itself was less invasive than a typical visual body cavity search, and that the officers took steps to ensure plaintiff's privacy to the fullest extent possible. Id. In all, Kramer exemplifies the particularized, individual approach, rather than the

7

per se approach urged by defendant.

In Sarnicola, a case not cited by defendant on this issue, the district court addressed the question of a per se rule, but with respect to arrestees charged with drug crimes instead of crimes of violence. Similar to defendant in the instant case, the defendants in Sarnicola pressed the court to find individualized reasonable suspicion sufficient to justify a strip search based on the mere fact that the plaintiff had been charged with a drug crime. The court declined, and instead looked at the totality of circumstances surrounding the search. The plaintiff had been arrested for felony drug distribution of ecstacy and then strip-searched by local law enforcement. The officer ordering the search admitted on the record that he had no particular reason to believe the plaintiff might be secreting contraband, beyond the mere fact she had been arrested for drug distribution. Sarnicola, 229 F. Supp. 2d at 271-72. In finding the search unconstitutional, the court noted that the record revealed no evidence "of any other objective fact that might have justified the search." Id. at 273. While acknowledging that a "narcotics offense could give rise to an inference that the arrestee was secreting drugs on her person," id. at 274, the court concluded that "[a]n automatic justification for strip searches based on an arrest for a drug-related crime would be inconsistent with the legal concept of reasonable suspicion based on the *totality* of the circumstances," id. at 274-75 (emphasis in original).

Similarly, this Court finds no support in this circuit's law for adopting the new, per se rule advocated by defendant.[3] That does not mean, however, that being charged with a crime of

---

[3]Defendant cites as persuasive precedent courts of appeals decisions from the Ninth, Eleventh, and Sixth circuits, and one case from the District of Kansas, claiming that dicta in Weber suggests the Second Circuit would be inclined to follow this "majority" of circuits. See Def.'s Mem. Supp. Summ. J. 6 (citing Hicks v. Moore, 422 F.3d 1246, 1252 (11th Cir. 2005); Thompson v. City of Los Angeles, 885 F.2d 1439, 1447 (9th Cir. 1989); Masters v. Crouch, 872

8

violence is not *relevant* to a finding of reasonable suspicion to justify the strip search. As a narcotics offense could give rise to an inference of hidden contraband, so a crime of violence could give rise to an inference of hidden weapons on the body, given the totality of the circumstances. Indeed, the Court finds that given the particulars of the charged offense, the characteristics of the detainee, and the particular safety considerations at issue, defendant DUSM Mead was justified in conducting a strip search.

Deputy Mead came to Rikers to take plaintiff into federal custody for an appearance before a Magistrate Judge on charges of attempting to kill a government witness. Specifically, the criminal complaint charged plaintiff along with two others of shooting the government witness in the head, upper torso, and leg, leaving him for dead. A confidential informant indicated to federal agents that plaintiff and members of his robbery crew shot the government witness, first, for stealing one of the crew's guns, and second, for fear he would inform law enforcement about a series of robberies they had committed. In deciding whether to strip-search plaintiff, a reasonable officer could certainly consider the brazen, calculated nature of a shooting meant in part to interfere with a federal investigation of the crew's multiple robberies. The specifics of the offense show a willingness to commit violence in a number of circumstances, for a number of reasons, and bear upon the risk that plaintiff would secret a weapon if given the opportunity.

---

F.2d 1248, 1255 (6th Cir. 1989); George v. City of Wichita, 348 F. Supp. 2d 1232, 1240-41 (D. Kan. 2004)). Three circuits and one district court does not make a majority, of course, and the passage of dicta in Weber cited by defendant does not in any way support defendant's argument. See Weber, 804 F.2d at 801. In short, without explicit guidance from the Court of Appeals, this Court declines to adopt a rule that does not require individualized suspicion or consider the totality of circumstances.

9

In considering plaintiff's opportunity, a reasonable officer could justifiably worry about the accessibility of weapons at Rikers Island. In support of his motion, defendant submitted several articles painting a grim picture of violence at Rikers, continuing even into recent years. Not just a thing of history, defendant provides sobering statistics that weapons found on inmates increased from 1,830 in 2005 to 2,174 in 2006, and rates of violence, if not at the levels of the early 1990's, have remained distressingly high. Def. Mem. Supp. Summ. J. Ex. 1, Graham Rayman, What the Jail Guard Saw, The Village Voice, July 10, 2007 (reviewing jail statistics at Rikers that show violent incidents stayed at over 8,000 per year for third year in a row). Although razor blades and shanks remain the favorites of smugglers, Rikers inmates have demonstrated that a variety of weapons, including firearms, can be hidden in body cavities. See Donatella Lorch, More Violence Disrupts Rikers Island, N.Y. Times, June 28, 1996 (describing inmate shooting with derringer-type firearm small enough to be smuggled in body cavity). It was therefore reasonable for defendant to consider the accessibility of weapons at Rikers in deciding whether to conduct a strip search. Additionally, the record does not indicate that Rikers personnel had recently strip-searched plaintiff, or otherwise suggest that Deputy Mead's alleged search was gratuitous. See Hodges v. Stanley, 712 F.2d 34, 35 (2d Cir. 1983) (finding a second strip search unreasonable where it was done shortly after an initial strip search and inmate was under continuous escort).

Finally, in deciding to strip-search plaintiff, it was reasonable for Deputy Mead to consider that he was bringing plaintiff to a courthouse, a relatively open environment with unique safety considerations. Despite an increased vigilance regarding security in recent years, federal courthouses are not jailhouses, nor should they be. The courthouse is a public place by

10

philosophy and design, and arraignments might find various people within a defendant's ambit—including court officers, attorneys, journalists, and anyone else in the courtroom there to witness the proceedings. But as the recent spate of violence in courthouses reminds us, while this openness should be cherished, it must be balanced by reasonable precautions. See, e.g., Attack in New York Courtroom Raises Safety Concerns, Associated Press, May 2, 2008, available at http://www.cnn.com/2008/CRIME/05/02/courtroom.attack.ap/index.html; Manuel Roig-Franzia and Melanie Lasoff Levs, Three Slain in Atlanta Courthouse Rampage, Washington Post, March 12, 2005; Deborah Sontag, In Courts, Threats Have Become a Fact of Life, N.Y. Times, March 20, 2005.

Plaintiff's history of violent crime, the nature of the charged crime, the access to weapons at Rikers, the relatively open environment where plaintiff would be transferred, all justify defendant's decision to strip search plaintiff.

### D. The Facial Validity of the U.S. Marshal's Policy Directives

Although not specifically challenged by plaintiff, the Court notes that the U.S. Marshal's Policy Directives authorizing strip searches are not facially invalid. Notably, the Policy Directives nowhere articulate a policy condoning automatic strip searches based solely on a category of detainee. Indeed, the Policy Directives largely mirror this circuit's case law requiring individualized, reasonable suspicion. See Policy Directive 9.3(D)(3)(a) (authorizing strip searches "where there is a reasonable suspicion that the prisoner may be (a) carrying contraband and/or weapons, or (b) considered to be a security, escape, and/or suicide risk"). Moreover, the Policy Directives list factors upon which a DUSM might base reasonable suspicion, several of which this Court found relevant and persuasive in the instant case. See id. (listing factors,

including serious nature of offense charged, circumstances regarding arrest, history of contraband or weapons in the institution.). Finally, the Policy Directives also direct the DUSM to conduct the search in a way as to minimize embarrassment: the search should be made in a private location, without closed circuit television cameras; both the deputy conducting the search, and the accompanying witness, should be of the same sex as the individual being searched. In all instances, the search "must be done in a professional manner." Id. If a DUSM follows the Policy Directives, as the uncontroverted evidence clearly demonstrates, then the search would be based on individualized, reasonable suspicion and not run afoul of the Fourth Amendment.

## CONCLUSION

For the above-stated reasons, defendant's motion for summary judgment is granted. Plaintiff's Bivens claim is dismissed, and the Clerk of the Court is directed to close this case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2008

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge